No. 17,388.

THE AMERICAN FURNITURE COMPANY OF DENVER *v.* MARGARET K. VEAZIE.

(281 P. [2d] 803)

Decided March 28, 1955.

Messrs. SHELDON & NORDMARK, for plaintiff in error.

Messrs. BENNETT & HEINICKE, for defendant in error.

*En Banc.*

MR. JUSTICE HOLLAND delivered the opinion of the Court.

Numerous reversible errors appear in this record and the case could easily be disposed of on the outstanding error of the trial court in its submission of the forms of verdict to the jury and thereby allowing plaintiff to recover double damages for one injury; however, such resolution of the cause would necessitate remand for a new trial and in that event it becomes necessary to determine at this time whether or not plaintiff has a maintainable cause of action.

Plaintiff, defendant in error, on July 15, 1948, purchased a new Magic Chef kitchen gas range from defendant, plaintiff in error, at its store in Colorado Springs, Colorado. She bought other merchandise at the same time and when her account was cleared the stove was delivered to her about November 5, 1948. She had shopped in other stores for such a gas range and was interested in another make, but determined that it was

too expensive. Defendant had numerous makes of ranges in its store and on display; however, plaintiff selected a Magic Chef from the makes in stock. It is undisputed that this was a largely advertised and standard brand of stove, and that plaintiff had heard of this make prior to the purchase. Defendant's salesman advised plaintiff that it was a good brand, and that he thought it would be satisfactory for her purposes. The stove in question was obtained by defendant from The American Stove Company and was delivered by it to defendant's store along with other similar stoves. Contrary to the allegation in plaintiff's complaint, the price of the stove did not include installation, and the stove was not installed by defendant, but by one Jardine—who later was made a codefendant—who was employed solely by plaintiff for this purpose. Plaintiff used the stove during the Thanksgiving and Christmas periods of 1948 and then called defendant on December 28, stating that the oven was not heating properly. Defendant was not under any contract of maintenance or servicing of the stove, but procured such service as a matter of policy and as an accommodation to customers. The complaint as first made concerned the matter of the regulation on the oven. This call was answered by a gas-servicing company, the records of which company show that a further service visit was made in January of 1949 to readjust the regulation. It is admitted by plaintiff that these two calls, December 28, 1948, and January, 1949, were in answer to the only complaints made by her to defendant about the manner in which the stove operated. Plaintiff continued daily use of the stove and its oven for approximately one year prior to March 8, 1950, when it exploded, due to an accumulation of gas in the oven, at the time the oven was being ignited. This explosion moved the stove from the wall; the oven door flew open and struck plaintiff on her thigh; she was not burned in any degree; however, she claimed that the explosion brought on a recurrence of asthma from which she had suffered since she

was a small child, and resulted in her leaving Colorado and permanently residing in California since 1952.

The morning after the explosion, plaintiff called defendant to report the happening. A representative from the gas servicing company responded to the call and he drilled three or four holes at the front of the burner as a precautionary measure—because of his prior experience with propane gas—and according to his testimony, he found that there was an extreme fluctuation in the gas pressure that could result in a build-up of gas in the oven, and which, when ignited, would cause an explosion.

Plaintiff, on June 3, 1952, filed her complaint in the district court alleging the purchase of the stove from defendant; that the purchase price included installation of the stove; that the stove was negligently and carelessly installed by defendant or its agent; and that due to such negligence the explosion occurred to plaintiff's injury. After numerous delays, the case finally came to issue upon plaintiff's second amended complaint, which contained two causes of action: First, upon the basis of implied warranty of fitness; and second, negligence on the part of defendant furniture company and the later named defendant, Jardine. In the answer of defendant furniture company, it admitted the sale of the stove to plaintiff; denied that it was negligent or careless in any respect in the sale or servicing thereof; denied that there was an implied warranty of fitness or a breach thereof; further set up an affirmative defense of negligence on the part of plaintiff; also unavoidable accident; and laches. The cause came to trial on November 10, 1953, before a jury, which, after being instructed to return one verdict, returned two. One for $4,863.87 on the first cause of action for breach of warranty, and the other for $2,431.94 on the cause of action for negligence.

■ If there was a warranty, express or implied, plaintiff failed to give defendant notice of the breach

thereof within a reasonable time, and such failure relieved defendant seller from any liability.

■ It is to be noted that by plaintiff's second amended complaint her first cause of action was based on an implied warranty of fitness. The evidence clearly established the fact that the stove here in question was a nationally advertised and standard brand of stove, which was known to plaintiff at the time she selected this particular stove from among other makes; and it cannot successfully be disputed that it was sold to her under such trade name. This being true, plaintiff is precluded on such claim by section 15 (4) chapter 228, S.L. '41 (C.R.S. '53, 121-1-15 (4) ), which is as follows:

"In the case of a contract to sell or a sale of a specified article under its patent or other trade name, there is no implied warranty as to its fitness for any particular purpose."

That there is no express warranty involved in this case is undisputed. Had there been an implied warranty, plaintiff, in failing to notify defendant of the breach of such warranty, and her continued use of the stove with knowledge of its claimed imperfections, for a period of sixteen months, more than a reasonable time under the circumstances, defeats her right to claim on this cause of action.

■ As to the alleged negligence asserted against defendant, it is difficult to ascertain from plaintiff's complaint or from her testimony what the elements of this claimed negligence were. She first alleges that defendant failed to inspect or test the stove in question. Under the Uniform Sales Act, the seller is under no duty to inspect or remedy small details of mechanism of national brand articles sold in the ordinary course of business. There being no duty, then there could be no breach of a duty, which must obtain before an action will lie. *Roessler v. O'Brien*, 119 Colo. 222, 201 P. (2d) 901, 46 Am. Jur., page 930, section 805.

Plaintiff seemed to take some pride in her claim of

familiarity with, and knowledge of, gas stoves. Surely this knowledge, and her continuing experience, as alleged, with this stove for a period of more than a year, was sufficient for her to be aware of any peril or dangers that might be connected with the continued use of the stove in question. It certainly cannot successfully be disputed that her continued use was intentional; that it was an unreasonable exposure on the part of plaintiff; and was sufficient to bar her recovery; moreover, there is no connection between this explosion after one year's use, and any act of defendant, and it follows that there was no negligence attributable to it.

As we read the evidence, it is wholly conjectural and speculative as to what was the proximate cause as to the occurrence of the accident. Many theories, possibilities and guesses are advanced as to what caused this unfortunate occurrence. In this connection, it is to be remembered that plaintiff operated the stove for one year after any complaint was made to defendant furniture company. During that period defendant was not required to know whether the stove operated defectively or not. There was no occasion for defendant to advise plaintiff that the stove might be dangerous when she, by her own statement and experience, knew that it was, and when, in effect, she stated that she needed no instructions because of her experience in using gas stoves. As we analyze the situation, there is no competent evidence to support plaintiff's allegation that defendant was negligent, and there is direct evidence to the contrary.

█ Together with the instructions, the trial court submitted three forms of verdict to the jury with the following statement in instruction No. 16, "With these instructions are three forms of verdict, one of which you should return * * *." One form was for a verdict on the first cause of action; another was for a verdict on the second cause of action; and the third was a verdict for defendant. The jury retired about 3:30 o'clock in the afternoon and returned the verdicts about midnight. When

the verdicts were presented to the court, he stated, "I hardly know what to say. The jury instructions said to bring in one of three verdicts. You brought in two verdicts. I believe the only thing I can do is to accept them. The final instructions said there are 'three forms of verdicts, one of which you are to return' and you found two." From the colloquy between the foreman of the jury and the court, at the time of the reception of the verdicts, it is abundantly clear that the jury was confused and the error was definitely and specifically before the court at the time and the trial judge finally said, "It may be that the two can be justified. I couldn't say without the attorneys present." The two verdicts representing two findings of damages for one injury was again presented to the court in the motion for new trial. The instruction of the court to return but one verdict after submitting forms for two verdicts was unmistakably confusing. It is difficult to understand why the court did not submit two forms of verdict for the first cause of action, namely, one for plaintiff and one for defendant, and two forms of verdict for the second cause of action. The jury undoubtedly was lead to believe that it had either to find for defendant on all causes of action or for the plaintiff. Occasion for this confusion could have been obviated by the court sustaining defendant's motion requiring plaintiff to elect which cause of action should be submitted to the jury. It should need no argument or discussion to support the statement that plaintiff was not entitled to recover on both theories for one injury, and the instructions and forms of verdict should have been so framed as not to confuse the jury into two awards for damages for one loss sustained.

For the reasons herein set out, the judgment is reversed, and the cause remanded with directions to dismiss the complaint.